Ronald WILKENS, Kenneth B. Thoma, George McDowell, for Themselves and Others Similarly Situated, Petitioners,

v.

IOWA INSURANCE COMMISSIONER, Respondent,

and

Regarding Allstate Insurance Company, Defendant.

Ronald WILKENS, Kenneth Thoma, George McDowell, for Themselves and Others Similarly Situated, Plaintiffs–Appellants,

v.

ALLSTATE INSURANCE, Defendant–Appellee.

No. 89–471.

Court of Appeals of Iowa.

Feb. 22, 1990.

Jack E. Dusthimer of Carlin, Hellstrom & Bittner, Davenport, for appellants.

Charles E. Miller of Lane & Waterman, Davenport, for appellee.

Considered by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

SACKETT, Judge.

This is an appeal from a trial court's order granting summary judgment to defendant-appellee Allstate Insurance Company. Plaintiffs-appellants Ronald Wilkens, Kenneth B. Thoma, and George McDowell, representatives of Allstate, sued Allstate for themselves and others similarly situated, contending it did not comply with certain Iowa statutes on insurance policies written for Iowa residents. The Insurance Commissioner, with permission, filed an amicus curiae brief. We have considered that brief. We affirm as modified the trial

court's order sustaining the motion for summary judgment.

Plaintiffs were agents of Allstate. They sued Allstate, contending it had violated Iowa law in failing to write certain policies in accordance with section 515 of the Iowa Code. Plaintiffs sought class certification, declaratory relief, and money damages for commissions on policies written. The district court transferred the case to the Iowa Insurance Commission for interpretation of the code sections in question. Plaintiffs filed another suit[1] against the commission, which was consolidated with the present action. Ultimately the case came before the trial court on Allstate's motion for summary judgment. The sustaining of that motion has led to this appeal.

Appellants' first argument is the trial court erred in finding no factual dispute existed. Appellants make some general references to a factual dispute and argue Allstate has not shown there is not a fact issue. The standard by which we review the granting of a motion for summary judgment is clearly established. *See Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984); *First Nat'l Bank v. Mackey*, 338 N.W.2d 361, 363 (Iowa 1983). We find no factual dispute exists.

Plaintiffs' next contention is Allstate did not comply with Iowa Code sections 515.52 through 515.56 (1989).[2] These sections deal generally with the requirement that insurance in this state be written by a licensed Iowa agent. Allstate is an Illinois-based insurance company, licensed to do business in Iowa. It is regulated under Iowa Code chapter 515. Allstate has a number of what are called unrepresented policies. This means these policies do not have an assigned agent. "Allstate" becomes the assigned agent. For many years Allstate spread these policies to agents closest to the insured's interest. The local agent countersigned the policy and received commission.

In the mid–1980s Allstate took the policies from local agents. The local agents lost their countersigning commission. One agent, Larry Hertel, now countersigns all these policies through a computer-generated typewritten name. Plaintiffs contend these actions violate the statutes because:

1. There is failure to obtain direct physical countersigning as required under section 515.52;

2. There is failure to have resident agents who are countersigning out-

---

1. This suit was ultimately dismissed by the district court and no appeal was taken from the ruling.

2. The sections provide in relevant part:

   **515.52 Issuance by licensed agents.** No insurance company shall write, issue, or place, or cause to be written, issued, or placed any policy or contract of insurance or endorsement thereto, covering risks on any property, insurable business activity, or interest, located within, or transacted within this state ... except through or by a duly licensed agent of such company, residing within this state, who shall before delivery, countersign said policy or contract of insurance or endorsement thereto. No such resident agent shall countersign such policies, contracts of insurance or endorsements in blank....

   **515.53 Agents on commission only.** Only resident agents within this state, whose compensation for soliciting and writing insurance is by way of commission figured as a percentage of the premium or membership fee for each policy or contract of insurance written, may countersign policies, contracts of insurance or endorsements thereto within this state. No branch manager, state agent, spe-

cial agent, or other supervisory agent, or any other representative of an insurance company whose compensation in the insurance business is derived either in whole or in part by salary may countersign policies, contracts of insurance or endorsements thereto on risks located in this state within the purview of section 515.52.

   **515.54 Agent within state countersigning—commission.** In the event policies, contracts of insurance or endorsements thereto on risks located within this state as defined in section 515.52 are contracted for or otherwise originate without the state, then in that event, there shall be payable to the countersigning agent, resident of the state, a commission which shall be not less than five percent of the premium charged for such policy, or contract of insurance or endorsement thereto....

   **515.56 Action on claim.** The resident countersigning agent shall have a direct claim against the insurance company issuing such policy, or contract of insurance or endorsement thereto for the agent's commission in accordance with sections 515.54 and 515.55. The liability of such company for such commission may be enforced in an action at law or equity as the case may be.

of-state policies maintain records of all countersignatures within the State of Iowa, in violation of Iowa Code section 515.57;

3. There is a failure to pay resident agents the required commission, in violation of Iowa Code section 515.54.

The commissioner determined the computer-generated signatures were permissible to meet the requirements of a signature for purposes of the applicable statute. Appellants contend they were not. Iowa Code section 4.1(17) (1989) provides:

> *Written—in writing—signature.* The words "written" and "in writing" may include any mode of representing words or letters in general use. A signature, when required by law, must be made by the writing or markings of the person whose signature is required. If a person is unable due to a physical handicap to make a written signature or mark, that person may [make substitutions] in lieu of a signature required by law....

In *Cummings v. Landes,* 140 Iowa 80, 82–83, 117 N.W. 22, 23 (1908), the Iowa court addressed the meaning of the word "signature" in the context of a statute requiring that notice of service be signed by a plaintiff or his or her attorney. The court discussed how the word "signature" is generally considered to be nearly synonymous with autograph, but allowed the name to be attached by any known method of impressing a name. *See also Ferguson v. Stilwill,* 224 N.W.2d 11, 13 (Iowa 1974) (in absence of statute prescribing method of affixing signature, it may be handwritten or printed).

We find the fact that the signature is computer-generated rather than hand-signed does not defeat the purpose of the act. The issue is not how the name is placed on a sheet of paper; rather, the issue is whether the person whose name is affixed intends to be bound. No one argues that the agent whose name was affixed did not intend to be bound. We find the signature requirements of the statute were met.

■ The next, and more important, issue is whether the signatures are in violation of the statute because they are, in essence, signed in blank. Plaintiffs argue one agent cannot and does not have sufficient knowledge of premiums and risks on over 4,500 policies. To decide this question we need to determine the section's purpose.

Allstate and the commissioner argue the underlying legislative intent is to ensure the collection of premium tax. Plaintiffs argue it is to assure their commission as agents. While the applicable sections address both issues, we determine the primary purpose of the section is to assure the Iowa consumer an acceptable product and to require that agents licensed in Iowa have input in the writing of policies sold in Iowa. The legislature has provided for the consumer purchasing insurance in Iowa to have the benefit of the expertise of a resident agent who has passed the required tests showing knowledge of local law and who knows the policy, the coverage, the risk, and the premiums. The payment of the commission is not for the presence of a signature but for the expertise in writing and placing the policy. We modify the findings of the trial court in this respect only.

■ However, there is no basis for plaintiffs to claim commissions on policies written. It is clear they performed no services with reference to any of the policies. The trial court was correct in dismissing their claim for damages.

■ Appellants next contend Allstate's record-keeping does not comply with the statute. Iowa Code section 515.57 (1989) provides:

> It shall be the duty of every resident countersigning agent for business originating without this state but covering property or business transactions within this state, and the insurance companies issuing such policies, to keep a written record of each such transaction which shall contain [specific information], and such records shall be subject to the inspection of the commissioner of insurance for the purpose of verifying the amount of premium tax payable by such company....

**4**

Allstate maintains the required information in its computer system and all countersigning agents have access to the information. The Commissioner made the following findings in determining this procedure complies with Section 515.57:

> [T]he Commissioner finds that Allstate is keeping adequate countersignature records on business originating from out-of-state. Nothing in section 515.57 ... precludes the keeping of these records in a computer, as Allstate does....

> The purpose of the countersignature requirement is verifying the payment of premium tax.... The system designed by Allstate to assist its agents in maintaining the required countersignature records also assists the Commissioner ... in ascertaining whether Allstate is paying premium tax on all the business actually written by it.

Section 515.57 originated in 1939. We recognize, as the commissioner argues, that methods of doing business have changed considerably since the time of the enactment of the statute. The advent of the computer age has resulted in businesses making substantial changes in record-keeping procedures. The insurance commissioner determined the records as kept were sufficient for his purposes. The commissioner is the person charged with the responsibility of assuring that insurance company procedures comply with statutes. We find no reason to interfere with the commissioner's decision on this issue.

Plaintiffs raise an additional issue, which we consider but find to be without merit.

We affirm the summary judgment as modified.

AFFIRMED AS MODIFIED.